IN THE
UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| THE REVEREND DAVID L. JEFFERSON<br>1121 Kalmia Road, N.W.<br>Washington, DC 20012<br>(202)262-0016<br><br>    Plaintiff,<br><br>    v.<br><br>STINSON MORRISON HECKER LLP<br>*dba* STINSON LEONARD STREET LLP<br>1201 Walnut Street<br>Suite 2900<br>Kansas City, Missouri 64106<br><br>    Serve:<br>    CT Corporation System<br>    1015 15th Street, N.W.<br>    Suite 1000<br>    Washington, DC 20005<br><br>    Defendant. | Civil Action No.: 1:16-cv-00898-RBW<br><br>No Jury Trial Demanded |

## AMENDED COMPLAINT

### INTRODUCTION

1. Plaintiff The Reverend David L. Jefferson ("Rev. Jefferson"), brings this action for declaratory, injunctive and monetary relief against Defendant Stinson Morrison Hecker LLP *dba* Stinson Leonard Street LLP, ("Defendant") for discrimination on the basis of disability in violation of Title III of the Americans with Disabilities Act of 1990, 42 U.S.C. §§ 12181–12189 ("ADA") and the District of Columbia Human Rights Act, D.C. Code §§ 2-1401.01–1404.04 ("DCHRA") in addition to a separate claim of Intentional Infliction of Emotional Distress.

Defendant failed to provide a reasonable accommodation at Stinson Leonard Street LLP, 1775 Pennsylvania Avenue N.W., Suite 800, Washington, DC 20006 (the "Law Firm"), which they own, lease, lease to or operate, to ensure that effective communication took place with individuals with disabilities using auxiliary aids, including Rev. Jefferson.

## JURISDICTION AND VENUE

2. This Court has jurisdiction over the ADA claim under 28 U.S.C. § 1331 because it arises under a law of the United States, 42 U.S.C. § 12188(a)(1). This Court also has jurisdiction over the ADA claim under 28 U.S.C. § 1343(a)(4) because it is authorized by law to secure equitable relief under an act of Congress providing for the protection of civil rights, 42 U.S.C. § 12188(a)(1).

3. This Court has supplemental jurisdiction over the DCHRA claim under 28 U.S.C. § 1367(a) because it is so related to the ADA claim that they form part of the same case or controversy under Article III of the United States Constitution.

4. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §1332(a)(1) because the action is between citizens of different States and the amount in controversy exceeds $75,000, exclusive of interest and costs.

5. Venue is proper in this judicial district under 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to Rev. Jefferson's claims occurred in this district, and the property that is the subject of this action is situated in this district.

## PARTIES

6. Rev. David L. Jefferson is a citizen of the United States and resides in the District of Columbia. Rev. Jefferson has physical and mental impairments of mild Traumatic Brain Injury, Somatoform Disorder, Convergence Insufficiency, Fatigue, Memory Loss, Major Depressive Disorder and Occipital Neuralgia that substantially limit him in the major life activities of

working, reading, seeing and communicating. He uses a visual aid to help with reducing the rate of mental fatigue, concentration errors, communication errors, pain management and overall negative impacts of reading from paper. See **Exhibit 5, Exhibits 15 thru 19**

7. Defendant is a Limited-Liability Partnership organized under the laws of Missouri that owns and/or operates numerous law offices across the country, including the Washington, DC Office: Stinson Leonard Street LLP, 1775 Pennsylvania Avenue N.W., Suite 800, Washington, DC 20006 (the "Law Firm").

## FACTUAL ALLEGATIONS

8. Prior to Rev. Jefferson's September 2014 deposition participation, Rev. Jefferson was a guest of the Law Firm on multiple occasions relating to a matter where the Law Firm represented a client in opposition to Rev. Jefferson.

9. During Rev. Jefferson's February 2014 deposition participation, Defendant through its' employees, partners, associates, agents and successors at the Law Firm was made aware of Rev. Jefferson's medical history, reliance on auxiliary aids, the relationship of mental stamina to reading text on paper and how stress impacts Rev. Jefferson's life. See **Exhibit 1**

10. Prior to Rev. Jefferson's September 2014 deposition participation, Rev. Jefferson witnessed the use of auxiliary aids or services during multiple meetings and depositions in the conference rooms at the Law Firm. See **Exhibit 2** The auxiliary aids or services did not seem to be a burden to the Law Firm due to its' adaptations of technology throughout the conference rooms and Rev. Jefferson witnessed the Defendant's ability to have Mr. Daniel C. Wennogle depose a witness at the Law Firm while he was in a different State using Video Technology. See **Exhibit 3**

11. Based on Rev. Jefferson's past history of acquiring personal service providers through business transactions, Rev. Jefferson saw the Law Firm as a potential service provider for future needs based on his interactions with the administrative staff, employees, personal experience in

the Martin Luther King, Jr. meeting room and overall experiences at the Law Firm.

12. Through counsel, Rev. Jefferson received a Notice of Deposition from the Law Firm on September 8, 2014. See **Exhibit 4**

13. On September 10, 2014, Rev. Jefferson's counsel sent an email to defense counsel at the Law Firm requesting a computer and/or tablet for viewing purposes along with a medical letter to accommodate Rev. Jefferson's disability. There was no objection in either verbal or written form to the request that was made on behalf of Rev. Jefferson. See **Exhibit 5**

14. On September 11, 2014, Defense counsel at the Law Firm made preparations and had discussions concerning Rev. Jefferson's upcoming September 17, 2014 deposition after receiving the medical letter. In addition, an affidavit of a Mr. Seth A. Robbins at number 4 identifies his responsibilities. See **Exhibit 6, Exhibit 7**

15. At the commencement of Rev. Jefferson's September 17, 2014 deposition, Defense counsel remembered that Rev. Jefferson's disability or impairments prevented him from working and inquired if he were back preaching in front of a congregation. See **Exhibit 8**

16. Following the commencement of Rev. Jefferson's September 17, 2014 deposition, counsel for Rev. Jefferson interrupted defense counsel at the Law Firm and reminded defense counsel about the request for a computer. See **Exhibit 8**

17. Defense counsel at the Law Firm responded that he has a computer and that Rev. Jefferson can look on the computer of his counsel if he has one. See **Exhibit 8**

18. Rev. Jefferson's counsel did not have a computer or tablet device and so Rev. Jefferson continued with the deposition without a visual aid due to feeling obligated to fulfill a Consent Order with the parties involved in opposition to Rev. Jefferson.

## RECORD FOLLOWING DISCRIMINATION

19. Witnessing the levels of stress, emotions and subsequent familiar effects resulting from Rev. Jefferson's deposition, Rev. Jefferson's wife started the paperwork on September 26, 2014 for him to get help from a health care facility recommended by his psychiatrist. See **Exhibit 9**

20. Rev. Jefferson's wife took on more responsibility within the home and worked tirelessly to manage, protect, guard and respectfully think for and speak through Rev. Jefferson in order to keep his and the overall home and legal affairs progressing forward including but not limited to responding to a Motion to Strike Errata Sheet bearing 41 changes and a manufactured medical problem that were a direct result of the strategically orchestrated actions of the Law Firm. See **Exhibit 10, Exhibit 11**

21. Rev. Jefferson received out-of-state medical hospitalization and treatment, which required coordination of care between Rev. Jefferson's wife and psychiatrist following the two-week period after completion of program on December 17, 2014. In addition, this medical hospitalization and treatment required Rev. Jefferson to be away from his children during Thanksgiving.

22. On September 14, 2015, Rev. Jefferson sought help from the Office of Disability Rights and after hearing that the offense took place on the date of September 17, 2014, a staff member from the Office of Disability Rights walked Rev. Jefferson to the Office of Human Rights where he received assistance in filling out his application due to it being in paper format. Rev. Jefferson was informed about a one-year statute of limitations.

23. On December 10, 2015, Rev. Jefferson's complaint filed with the Office of Human Rights was dismissed without prejudice for failing to state a claim for which relief can be granted. See **Exhibit 12**

24. On December 15, 2015, Rev. Jefferson appealed the decision of the Office of Human Rights and requested that the complaint be re-opened. See **Exhibit 13**

25. On April 7, 2016, Rev. Jefferson received notification that the Office of Human Rights affirmed the administrative dismissal. See **Exhibit 14**

26. Finding attorneys unwilling to take Rev. Jefferson's case against a potential employer for said attorneys, Rev. Jefferson's complaint proceeded pro se.

**TOLLING REQUESTED**

27. Rev. Jefferson seeks that the one-year statute of limitations claim is tolled during the period identified in facts 19 thru 21 according to D.C. Code § 12-302(2).

28. Rev. Jefferson seeks that the one-year statute of limitations claim is tolled during the period identified in facts 22 thru 25 according to D.C. Code § 2-1403.16(a).

## CLAIMS FOR RELIEF

### COUNT I

**VIOLATION OF TITLE III OF THE AMERICANS WITH DISABILITIES ACT**

29. Rev. Jefferson incorporates every allegation in this Complaint as if fully set forth herein.

30. The ADA provides that "[n]o individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation." 42 U.S.C. § 12182(a).

31. The ADA identifies the following as discrimination: " a failure to make reasonable modifications in policies, practices, or procedures, when such modifications are necessary to afford such goods, services, facilities, privileges, advantages, or accommodations to individuals with disabilities, unless the entity can demonstrate that making such modifications would fundamentally alter the nature of such goods, services, facilities, privileges, advantages, or accommodations." 42 U.S.C. § 12182(b)(2)(A)(ii); 28 C.F.R. § 36.302

32. The ADA identifies the following as discrimination: "a failure to take such steps as may be necessary to ensure that no individual with a disability is excluded, denied services, segregated or otherwise treated differently than other individuals because of the absence of auxiliary aids and services, unless the entity can demonstrate that making such modifications would fundamentally alter the nature of such good, services, facility, privilege, advantage, or accommodation being offered or would result in an undue burden." 42 U.S.C. § 12182(b)(2)(A)(iii); 28 C.F.R. § 36.302

33. The Department of Justice regulation implementing Title III of the ADA is codified at 28

C.F.R. Part 36 & Appendix C. Appendix C, entitled Preamble to Regulation on Nondiscrimination on the Basis of Disability by Public Accommodations and in Commercial Facilities, provides an appendix with the text of the preamble to the final regulation on nondiscrimination on the basis of disability by public accommodations and in commercial facilities beginning with a section-by-section analysis and response to comments. Under Section 36.303 Auxiliary Aids and Services, it states the following: "Based upon a careful review of the ADA legislative history, the Department believes that Congress did not intend under title III to impose upon a public accommodation the requirement that it give primary consideration to the request of the individual with a disability. To the contrary, the legislative history demonstrates congressional intent to strongly encourage consulting with persons with disabilities. In its analysis of the ADA's auxiliary aids requirement for public accommodations, the House Education and Labor Committee stated that it "expects" that "public accommodation(s) will consult with the individual with a disability before providing a particular auxiliary aid or service" (Education and Labor report at 107)." Public accommodations must ensure that no individual with a disability is excluded, denied services, segregated or otherwise treated differently than other individuals because of the absence of auxiliary aids and services, including qualified interpreters, where necessary to ensure effective communication for individuals with disabilities. 28 C.F.R. § 36.303(c).

34. The ADA defines "disability," with respect to an individual, as including "a physical or mental impairment that substantially limits one or more major life activities of such individual." 42 U.S.C. § 12102(1)(A).

35. The ADA defines "major life activities" as including "working, reading, seeing and communicating." 42 U.S.C. § 12102(2)(A).

36. The ADA defines "public accommodation" as a private entity whose operations affect commerce, including "office of an accountant or lawyer, or other service establishment." *Id.* § 12181(7)(F).

37. Rev. Jefferson is an individual with a disability within the meaning of the ADA because he has mental and physical impairments of mild Traumatic Brain Injury, Somatoform Disorder, Convergence Insufficiency, Fatigue, Memory Loss, Major Depressive Disorder and Occipital Neuralgia that substantially limits his major life activity of working, reading, seeing and communicating. See **Exhibit 1, Exhibit 5, Exhibits 15 thru 19**

38. The Law Firm is a public accommodation within the meaning of the ADA because it is a private entity, it is an office of a lawyer or other service establishment, which operations affect commerce.

39. Title III of the ADA applies to Defendant Stinson Leonard Hecker LLP because it owns, leases (or leases to) or operates places of public accommodation.

40. Defendant discriminated against Rev. Jefferson in violation of Title III of the ADA by denying him, on the basis of his disability, the full and equal enjoyment of the goods, services, facilities, privileges, advantages or accommodations of the law offices by excluding Rev. Jefferson from the advantage, privilege, accommodation and full and equal enjoyment of an appropriate auxiliary aid for a September 2014 deposition.

41. Defendant discriminated against Rev. Jefferson in violation of Title III of the ADA by denying him the use of an auxiliary aid that interfered with Rev. Jefferson's ability to read and understand the written material on paper and interrupted the communication process during the deposition.

42. Defendant discriminated against Rev. Jefferson in violation of Title III of the ADA by excluding him from a privilege and advantage provided to others during depositions that was not afforded to him.

43. Defendant discriminated against Rev. Jefferson in violation of Title III of the ADA by not communicating with Rev. Jefferson through counsel to ensure that effective communication took place during the September 2014 deposition.

44. Defendant is liable for the violations of Rev. Jefferson's rights that occur at its law

offices or other service establishments, which are places of public accommodation as defined by the ADA, because at all times relevant hereto every Stinson Leonard Street LLP office is either owned and/or operated by Defendant. Additionally, Defendant's employees, associates, partners and/or agents were acting (a) with the consent of, (b) under the control or supervision of, and/or (c) within the authority as employees and/or agents of Defendant.

## COUNT II

### VIOLATION OF THE DISTRICT OF COLUMBIA HUMAN RIGHTS ACT
### D.C. CODE §§ 2-1401.01–1404.04

45. Rev. Jefferson incorporates every allegation in this Complaint as if fully set forth herein.

46. The DCHRA provides that "[i]t shall be an unlawful discriminatory practice to do any of the following acts, wholly or partially for a discriminatory reason based on the actual or perceived . . . disability . . . of any individual: . . . [t]o deny, directly or indirectly, any person the full and equal enjoyment of the goods, services, facilities, privileges, advantages, and accommodations of any place of public accommodations . . . ." D.C. Code § 2-1402.31(a)(1).

47. The DCHRA further provides that "[a]ny practice which has a discriminatory effect and which would otherwise be prohibited by this chapter shall not be deemed unlawful if it can be established that such practice is not intentionally devised or operated to contravene the prohibitions of this chapter and can be justified by business necessity. Under this chapter, a 'business necessity' exception is applicable only in each individual case where it can be proved by a respondent that, without such exception, such business cannot be conducted; a 'business necessity' exception cannot be justified by the facts of increased cost to business, business efficiency, the comparative characteristics of one group as opposed to another, the stereotyped characterization of one group as opposed to another, and the preferences of co-workers, employers, customers or any other person." D.C. Code § 2-1401.03(a).

48. The DCHRA's prohibition of discrimination on the basis of disability applies to the same extent, and with the same effect, as Title III of the ADA.

49. The DCHRA defines "disability" as including "a physical or mental impairment that substantially limits one or more of the major life activities of an individual." D.C. Code § 2-1401.02(5A).

50. The DCHRA defines "place of public accommodation" as including "establishments dealing with goods or services of any kind." D.C. Code § 2-1401.02(24).

51. Rev. Jefferson is an individual with a disability within the meaning of the DCHRA because he has mental and physical impairments of mild Traumatic Brain Injury, Somatoform Disorder, Convergence Insufficiency, Fatigue, Memory Loss, Major Depressive Disorder and Occipital Neuralgia that substantially limits his major life activity of working, reading, seeing and communicating. See **Exhibit 1, Exhibit 5, Exhibits 15 thru 19**

52. The Law Firm, is a public accommodation within the meaning of the DCHRA because it is an establishment dealing with goods or services of any kind.

53. Defendant is an entity covered by the DCHRA because it owns, leases (or leases to) or operates a place of public accommodation, namely, the Law Firm.

54. Defendant discriminated against Rev. Jefferson in violation of the DCHRA because, wholly or partially for a discriminatory reason based on his disability, it denied him the full and equal enjoyment of the goods, services, facilities, privileges, advantages and accommodations of the Law Firm.

55. Defendant further discriminated against Rev. Jefferson in violation of the DCHRA because their failure to provide a public accommodation had the discriminatory effect of denying him, based on his disability, the full and equal enjoyment of the goods, services, facilities, privileges, advantages and accommodations of the Law Firm.

56. Defendant's failure to provide a public accommodation cannot be justified by business necessity because public accommodations were made during other depositions and meetings that Rev. Jefferson witnessed while on site at the Law Firm.

57. Defendant's violation of the DCHRA has proximately caused Rev. Jefferson to suffer

embarrassment, communication errors, frustration, indignity, anger, physical and emotional pain.

58. Defendant is liable for the violations of Rev. Jefferson's rights under the DCHRA because at all times relevant hereto Defendant's employees, associates, partners and/or agents were acting (a) with the consent of, (b) under the control or supervision of, and/or (c) within the authority as employees and/or agents of Defendant.

## COUNT III

### CLAIM OF INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

59. Rev. Jefferson incorporates every allegation in this Complaint as if fully set forth herein.

60. Defendant, through its' employees, partners, associates, agents and successors at the Law Firm, used prior knowledge of Rev. Jefferson's disability and reliance on auxiliary aids from a February 2014 deposition and took extreme effort to cause errors, stress, humiliation and embarrassment by denying the public accommodation for Rev. Jefferson's videotaped September 2014 deposition without prior notice or discussion.

61. Defendant, through its' employees, partners, associates, agents and successors at the Law Firm, discussed and implemented an intentional strategy for Rev. Jefferson's deposition with the additional information from the public accommodation request, which included a medical letter to support Rev. Jefferson's disability. See **Exhibit 6, Exhibit 7**

62. As a result of Defendant's intentional infliction of emotional distress, Rev. Jefferson produced communication errors, endured physical and emotional pain that required the assistance of a Mental Health Unit and being away from his family during Thanksgiving.

### PRAYER FOR RELIEF

**WHEREFORE**, Rev. Jefferson prays that this Court:

A. grant judgment under 28 U.S.C. § 2201(a), 42 U.S.C. § 12188(a)(1), and D.C. Code § 2-1403.16 in favor of Rev. Jefferson and declare that Defendants violated Title III of the ADA, 42 U.S.C. §§ 12181-12189, and the DCHRA, D.C. Code §§ 2-1401.01 to -1404.04;

B.  enjoin Defendant and its' attorneys, partners and associates under 42 U.S.C. § 12188(a)(1) and D.C. Code § 2-1403.16 from engaging in discrimination against individuals with disabilities, and specifically from failing to comply with Title III of the ADA, 42 U.S.C. §§ 12181-12189, and the DCHRA, D.C. Code §§ 2-1401.01 to -1404.04;

C.  order Defendant's Washington Office attorneys, partners and associates under D.C. Code § 2-1403.16 to attend an in-person Continuing Legal Education course on Discrimination related to any of the following: (a). mental disability, (b). communicating with the disabled using auxiliary aids or technology, (c). discriminating against the disabled or (d). ensuring that the disabled are afforded the full and equal enjoyment of the goods, services, facilities, privileges, advantages and accommodations;

D.  award monetary damages to Rev. Jefferson under D.C. Code § 2-1403.16 in the amount of Thirty-Nine Thousand Four Hundred Twenty-Three Dollars and Forty-three Cents ($39,423.43) to compensate him for the injuries that he suffered as a result of Defendants' unlawful discrimination; See **Exhibit 20**

E.  award monetary damages to Rev. Jefferson under Count III in the amount of Forty Thousand Dollars ($40,000.00) to compensate him for the injuries that he suffered as a result of Defendants' unlawful intentional discrimination to inflict emotional distress;

F.  award punitive damages to Rev. Jefferson under D.C. Code § 2-1403.16 by multiplying the sum awarded for compensatory damages by a factor of three;

G.  award punitive damages to Rev. Jefferson under Count III in an amount equal to at least Fifty Thousand Dollars ($50,000);

H.  award reasonable attorney's fees, including litigation expenses, and costs under 42 U.S.C. § 12205 and D.C. Code § 2-1403.16 (if the court were to assign counsel to Plaintiff or Plaintiff were to find an attorney); and

I.  grant such other relief as the Court may deem just and proper.

Dated: May 25, 2016                     Respectfully submitted,

                                        _____
                                        The Reverend David L. Jefferson