# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| REVEREND DAVID L. JEFFERSON, | ) |
| Plaintiff, | ) |
| v. | ) Civil Action No. 16-898 (RBW) |
| STINSON MORRISON HECKLER LLP d/b/a STINSON LEONARD STREET LLP, | ) |
| Defendant. | ) |

## MEMORANDUM OPINION

The plaintiff in this civil action, Reverend David L. Jefferson, alleges that the defendant, Stinson Morrison Hecker LLP[1] ("Stinson"), discriminated against him on the basis of his disability, Third Amended Complaint ("Third Am. Compl.") ¶ 1, and brings claims against the defendant under the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. §§ 12181–12189 (2012), the District of Columbia Human Rights Act (the "Human Rights Act"), D.C. Code Ann. §§ 2-1401.01–1404.04 (2001), and a claim of intentional infliction of emotional distress under District of Columbia common law, Third Am. Compl. ¶¶ 45–46, 57–58, 63. Currently before the Court is the Defendant's Motion to Dismiss Plaintiff's Third Amended Complaint ("Def.'s Mot."). Upon careful consideration of the parties' submissions,[2] the Court concludes that it must grant Stinson's motion to dismiss.

---

[1] The defendant now does business as Stinson Leonard Street LLP.

[2] In addition to the documents already identified, the Court considered the following submissions in reaching its decision: (1) the Statement of Points and Authorities in Support of Defendant's Motion to Dismiss Plaintiff's Third Amended Complaint ("Def's Mem."); (2) the plaintiff's Opposition to Defendant's Motion to Dismiss Plaintiff's Third Amended Complaint ("Pl.'s Opp'n"); and (3) the Defendant's Reply in Support of its Motion to Dismiss Third Amended Complaint ("Def.'s Reply").

# I. BACKGROUND

According to the plaintiff's Third Amended Complaint, he suffers from "physical and mental impairments of mild Traumatic Brain Injury, Somatoform Disorder, Convergence Insufficiency, Fatigue, Memory Loss, Major Depressive Disorder[,] and Occipital Neuralgia that substantially limit him in the major life activities of working, reading, seeing[,] and communicating." Third Am. Compl. ¶ 6. During 2014, Stinson represented clients who were named as defendants by the plaintiff in a separate matter assigned to this Court. Id. ¶ 8. Related to that litigation, on September 8, 2014, a Stinson attorney sent to the plaintiff's counsel a notice to take the plaintiff's deposition. Id. ¶ 12. In response, on September 10, 2014, the plaintiff's counsel sent an e-mail to Stinson requesting that a computer or tablet be provided for the plaintiff to use during the deposition. Id. ¶ 13. Stinson neither objected to this request nor did it provide the plaintiff with a computer or tablet during the deposition, which was conducted on September 17, 2014. Id. ¶¶ 13–18. The plaintiff asserts that he felt obligated to continue with the deposition despite not having the assistance of a computer or a tablet. Id. ¶ 18.

The plaintiff alleges that his participation in the deposition without a computer or tablet caused him stress, which led him to seek "help from a heath care facility recommended by his psychiatrist." Id. ¶ 19. Subsequently, the plaintiff's wife took on the responsibility of managing the plaintiff's affairs while he received "out-of-state medical hospitalization and treatment" until December 17, 2014. Id. ¶¶ 20–21.

On September 14, 2015, almost one year after the deposition was conducted, the plaintiff filed a complaint with the District of Columbia Office of Human Rights (the "Human Rights Office"), id. ¶ 22, which dismissed the plaintiff's complaint without prejudice for failing to state a claim for which relief could be granted, id. ¶ 23. The plaintiff appealed the decision, but the

Human Rights Office affirmed its dismissal. Id. ¶¶ 24–25. The plaintiff then filed his original complaint in this matter on May 11, 2016. See Complaint (May 11, 2016), ECF No. 1.

## II. STANDARDS OF REVIEW

The plaintiff seeks dismissal of the Third Amended Complaint under both Rules 12(b)(1) and Rule 12(b)(6) of the Federal Rules of Civil Procedure. See generally Def.'s Mot. Consideration of such motions are evaluated under the following standards of review.

### A. Federal Rule of Civil Procedure 12(b)(1)

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(1) "presents a threshold challenge to the court's jurisdiction." Morrow v. United States, 723 F. Supp. 2d 71, 75 (D.D.C. 2010) (Walton, J.) (quoting Haase v. Sessions, 835 F.2d 902, 906 (D.C. Cir. 1987)). While a court must "assume the truth of all material factual allegations in the complaint and 'construe the complaint liberally, granting [the] plaintiff the benefit of all inferences that can be derived from the facts alleged,'" Am. Nat'l Ins. Co. v. FDIC, 642 F.3d 1137, 1139 (D.C. Cir. 2011) (quoting Thomas v. Principi, 394 F.3d 970, 972 (D.C. Cir. 2005)), the plaintiff nonetheless bears the burden of establishing by a preponderance of the evidence that the court has subject matter jurisdiction, Lujan v. Defs. of Wildlife, 504 U.S. 555, 561 (1992). Accordingly, "'the [p]laintiff's factual allegations in the complaint . . . will bear closer scrutiny in resolving a 12(b)(1) motion' than in resolving a 12(b)(6) motion for failure to state a claim." Grand Lodge of the Fraternal Order of Police v. Ashcroft, 185 F. Supp. 2d 9, 13–14 (D.D.C. 2001) (quoting 5A Charles A Wright & Arthur R. Miller, Federal Practice & Procedure § 1350 (2d ed.)). Moreover, "the court need not limit itself to the allegations of the complaint." Id. at 14. Instead, "a court may consider such materials outside the pleadings as it deems appropriate to resolve the

3

question [of] whether it has jurisdiction [in] the case." Scolaro v. D.C. Bd. of Elections & Ethics, 104 F. Supp. 2d 18, 22 (D.D.C. 2000).

**B.      Federal Rule of Civil Procedure 12(b)(6)**

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Thus, to survive a motion to dismiss for "failure to state a claim upon which relief may be granted," Fed. R. Civ. P. 12(b)(6), the complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face,'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). A "claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. (citing Twombly, 550 U.S. at 556); see also Kowal v. MCI Commc'ns Corp., 16 F.3d 1271, 1276 (D.C. Cir. 1994) (a plaintiff is entitled to "the benefit of all inferences that can be derived from the facts alleged"). Although the Court must accept the facts pleaded as true, legal allegations devoid of factual support are not entitled to this assumption. See Kowal, 16 F.3d at 1276. Along with the allegations made within the four corners of the complaint, the court may also consider "any documents either attached to or incorporated in the complaint and matters of which [it] may take judicial notice." EEOC v. St. Francis Xavier Parochial Sch., 117 F.3d 621, 624 (D.C. Cir. 1997).

## III. ANALYSIS

### A. The Plaintiff's ADA Claim

The plaintiff alleges that by failing to provide him with a computer or tablet to use during his deposition, Stinson violated Title III of the ADA.[3] Third Am. Compl. ¶ 43. Title III provides that "[n]o individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation." 42 U.S.C. § 12182(a). Private parties bringing suit under Title III of the ADA are limited exclusively to injunctive relief. See 42 U.S.C. § 12188 (incorporating § 2000a-3(a) into Title III of the ADA); see also Deck v. Am. Haw. Cruises, Inc., 121 F. Supp. 2d 1292, 1297 n. 5 (D. Haw. 2000) ("Injunctive relief is the only remedy to which a private plaintiff is entitled in a suit brought pursuant to Title III of the ADA."). In this case, Stinson argues that the plaintiff lacks standing to assert his ADA claim because the "[p]laintiff has not shown a sufficient likelihood of future harm" that could be remedied by injunctive relief. Def.'s Mem. at 4. The Court agrees.

This Court's powers under Article III of the United States Constitution are limited to adjudicating actual cases or controversies. Honig v. Doe, 484 U.S. 305, 317 (1988). "In an attempt to give meaning to Article III's case-or-controversy requirement, the courts have developed a series of principles termed 'justiciability doctrines,' among which are standing[,] ripeness, mootness, and the political question doctrine." Nat'l Treasury Emps. Union v. United States, 101 F.3d 1423, 1427 (D.C. Cir. 1996). To establish standing, the plaintiff must show: (1)

---

[3] It is notable that the complaint does not include an allegation that the plaintiff or his counsel made a request that they be allowed to bring their own laptops to the deposition. See generally Third Am. Compl. This omission seemingly undermines the plaintiff's claim that he was denied the accommodation he claims he requested.

5

that he has suffered an injury in fact, defined as the invasion of a legally protected interest that is both (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical; (2) that a causal connection exists between the injury and the conduct at issue, such that the injury is fairly traceable to the challenged conduct; and (3) that it is likely, not merely speculative, that the injury will be redressed by a decision in favor of the plaintiff. Lujan, 504 U.S. at 560.

In addition, in an action seeking injunctive relief, such as an action by a private party under Title III of the ADA, see 42 U.S.C. §§ 2000a-3(a), 12188, "harm in the past . . . is not enough to establish a present controversy, or in terms of standing, an injury in fact," Am. Soc'y for the Prevention of Cruelty to Animals v. Ringling Bros. & Barnum & Bailey Circus, 317 F.3d 334, 336 (D.C. Cir. 2003). Thus, when seeking injunctive relief, the plaintiff "must allege a likelihood of future violations of [his] rights . . . , not simply future effects from his past violations." Fair Emp't Council of Greater Wash., Inc. v. BMC Mktg. Corp., 28 F.3d 1268, 1273 (D.C. Cir. 1994). Put differently, "[b]ecause injunctions regulate future conduct, a party has standing to seek injunctive relief only if the party alleges, and ultimately proves, a real and immediate—as opposed to merely conjectural or hypothetical—threat of future injury." Nat. Res. Def. Council v. Pena, 147 F.3d 1012, 1022 (D.C. Cir. 1998) (quoting Church v. City of Huntsville, 30 F.3d 1332, 1337 (11th Cir. 1994)).

As other courts have observed, the standing requirement for injunctive relief under Title III of the ADA "cannot be met absent a showing of a real or immediate threat that the plaintiff will be wronged again." Deck, 121 F. Supp. 2d at 1297. Additionally, "[a] plaintiff's intention to return to [a] defendant's place of public accommodation 'some day . . . without any description of concrete plans, or indeed even any specification of when the some day will be—do

6

not support a finding of the' requisite actual or imminent injury" sufficient to entitle the plaintiff to injunctive relief. Anderson v. Macy's, Inc., 943 F. Supp. 2d 531, 540 (W.D. Pa. 2013) (quoting Lujan, 504 U.S. at 564).

In a case very similar to the present dispute, the United States District Court for the Northern District of Illinois held that a plaintiff lacked standing where he asserted that a law firm had violated Title III of the ADA by failing to accommodate his disability during a mediation held at the law firm's office. Novak v. Litchfield Cavo, LLP, No. 14-CV-3649, 2014 WL 7330925, at *2–4 (N.D. Ill. Dec. 22, 2014). The court in Novak reasoned that even though the plaintiff was involved in ongoing litigation with the defendant law firm, the plaintiff's general intention to return to the law firm at some point during the litigation was insufficient to confer standing. Id. at *4. Because the plaintiff's intentions were not concrete, the court held that the plaintiff lacked standing. Id. The Court is persuaded by Novak's reasoning and outcome.

The plaintiff argues that his claim is distinguishable from Novak because his "deposition in the present case has not started, the imminent return to Stinson's office for discovery is yet to be determined, and [the d]efendant is involved in the [p]laintiff's present lawsuit." Pl.'s Opp'n at 5. However, these are precisely the arguments rejected by the court in Novak. See 2014 WL 7330925, at *4 ("[The p]laintiff's argument that he intends to return to Litchfield Cavo—his adversary in ongoing litigation—at some point in the future is also unavailing . . . ."). The fact that the plaintiff may at some point during this litigation return to Stinson is not a "concrete plan" that could support a finding of an imminent injury. See Lujan, 504 U.S. at 564. Indeed, as Stinson correctly argues, "[t]he filing of a complaint does not guarantee that [the p]laintiff will be deposed in the action." Def.'s Reply at 2. And even if Stinson were to depose the plaintiff, there is no guarantee that the deposition would occur at Stinson's office. See P.Y.M.T. v. City of

Fresno, No. 1:15-CV-710-JAM-BAM, 2016 WL 2930539, at *2 (E.D. Cal. May 19, 2016) (concluding that Federal Rule of Civil Procedure 30(b)(1) allows the examining party to "unilaterally choose a deposition's location."). Because the plaintiff has not shown that he will be further deposed, and if so, that it would occur at Stinson's office, the plaintiff has not demonstrated Article III standing entitling him to relief under Title III of the ADA. Accordingly, this claim must be dismissed pursuant to Rule 12(b)(1) for lack of subject matter jurisdiction.[4]

**B.      The Plaintiff's Human Rights Act Claim**

The plaintiff also alleges that Stinson's failure to provide him with a laptop or tablet at the September 17, 2014 deposition violated the Human Rights Act. Third Am. Compl. ¶¶ 57–58. The Human Rights Act provides that "[i]t shall be an unlawful discriminatory practice to . . . deny, directly or indirectly, any person the full and equal enjoyment of the goods, services, facilities, privileges, advantages, and accommodations of any place of public accommodations." D.C. Code Ann. § 2-1402.31(a). Additionally, the act specifies that "[a] private cause of action pursuant to this chapter shall be filed in a court of competent jurisdiction within one year of the unlawful discriminatory act." Id. § 2-1403.16. However, "[t]he timely filing of a complaint with the [Human Rights] Office . . . shall toll the running of the statute of limitations while the complaint is pending." Id.

The alleged discriminatory action in this case occurred on September 17, 2014, and the plaintiff filed a complaint with the Human Rights Office on September 14, 2015, just three days

---

[4] Because the Court concludes that it lacks jurisdiction to adjudicate the plaintiff's ADA claim, it does not reach the merits of that claim, including the issue of whether the premises of a law firm at which a deposition is conducted constitutes a "place of public accommodation" under the ADA. See Def.'s Mem. at 10–13 (arguing that a "deposition" is not a "public accommodation" under the ADA or the Human Rights Act). Although the Court will dismiss the plaintiff's ADA claim, the sole federal cause of action asserted in this case, it appears that the Court has diversity jurisdiction over the remaining state law claims in this case. See Third Am. Compl. ¶ 4 (alleging diversity of citizenship and amount in controversy in excess of $75,000; id. at 12 ¶¶ D–G (setting forth requests for compensatory, treble, and punitive damages).

8

before the one-year statute of limitations would have expired. Third Am. Compl. ¶¶ 15, 22. Pursuant to the Human Rights Act, the running of the statute of limitations was tolled while the plaintiff's complaint was pending with the Human Rights Office. See D.C. Code Ann. § 2-1403.16. The Human Rights Office dismissed the plaintiff's complaint on December 10, 2015, Third Am. Compl. ¶ 23, and the plaintiff received notice on April 7, 2016, that the Human Rights Office had affirmed its dismissal of his complaint, id. ¶¶ 24–25. Thus, as of April 7, 2016, the plaintiff's complaint was no longer pending with the Human Rights Office, leaving three days for the plaintiff to file this case before the statute of limitations applicable to his Human Rights Act claim would to expire. However, the plaintiff did not file his original complaint in this case until May 11, 2016, one month after the statute of limitations had expired. See Complaint (May 11, 2016), ECF No. 1. The plaintiff's Human Rights Act claim was therefore filed untimely.

In an attempt to rescue the untimely filing of this claim, the plaintiff contends that the statute of limitations should be tolled from September 17, 2014, to December 17, 2014, "on the grounds of mental disability." Pl.'s Opp'n at 5. The District of Columbia Code provides that the running of a statute of limitations will be tolled when the plaintiff is, "at the time the right of action accrues[,] . . . non compos mentis." D.C. Code Ann. § 12-302(a) (2001). A party is considered non compos mentis under District of Columbia law when he is "incapable of handling his own affairs or unable to function [in] society." Hendel v. World Plan Exec. Council, 705 A.2d 656, 665 (D.C. 1997) (alteration in original). Thus, to demonstrate that the statute of limitations should be tolled in this case, as argued by the plaintiff, he would have to prove that he was non compos mentis, or totally incapacitated, during the period of time when he contends the statute of limitations should be tolled. See Oparaugo v. Watts, 884 A.2d 63, 73

(D.C. 2005 ("When a person is non compos mentis at the time the cause of action accrues, he may bring his action 'within the time limited after the disability is removed.'" (quoting D.C. Code § 12-302(a)(2) (emphasis added)).

The plaintiff argues that he was non compos mentis from September 17, 2014, to December 17, 2014, because his "mental disabilities existed before the September 2014 deposition and were managed with appropriate aids and circumstance avoidance," but that these disabilities were exacerbated by Stinson's conduct during the deposition. Pl.'s Opp'n at 5. While the plaintiff alleges severe after-effects from the deposition at Stinson, see Third Am. Compl. ¶¶ 19–21, these allegations do not rise to the level of establishing that he was "incapable of handling his own affairs or unable to function [in] society," Hendel, 705 A.2d at 665 (alteration in original), from September 17, 2014, to December 17, 2014. Indeed, he concedes that his claimed mental disabilities "were managed" at that time. Pl.'s Opp'n at 5. Moreover, the plaintiff's own conduct belies his contention of incapacitation, as he attended the September 17, 2014 deposition, and thereafter signed an errata sheet which corrected his deposition testimony several weeks later on October 2, 2014. Def.'s Mem. at 5. While the plaintiff may have been assisted by counsel in these matters, his actions nonetheless demonstrate that he was not totally incapacitated during this entire period.[5] Therefore, the plaintiff has not demonstrated that he was non compos mentis at the time that this right of action accrued, and the plaintiff's Human Rights Act claim is accordingly barred by the statute of limitations.

---

[5] The plaintiff also suggests that his hospitalization demonstrates that he was non compos mentis. See Third Am. Compl. ¶¶ 19, 30. Assuming, arguendo, that the plaintiff was non compos mentis during the period of his hospitalization, the statute of limitations nonetheless would not be tolled because he was not incapacitated "at the time the right of action accrue[d]." D.C. Code. Ann. § 12-302(a). Although the plaintiff does not specify the date on which he was admitted to the hospital, it is clear from the plaintiff's complaint that it was on or after September 26, 2014, and not on the date that he suffered the alleged injury. See Third Am. Compl. ¶ 19 ("[The plaintiff's] wife started the paperwork on September 26, 2014[,] for him to get help from a health care facility . . . .").

10

**C.    The Plaintiff's Intentional Infliction of Emotional Distress Claim**

Finally, the plaintiff alleges that Stinson's failure to accommodate his request for a computer or tablet during the September 2014 deposition amounted to intentional infliction of emotional distress under District of Columbia common law. In order to establish a claim for intentional infliction of emotional distress, a plaintiff must show that a defendant "engage[d] in (1) 'extreme or outrageous conduct' which (2) 'intentionally or recklessly' causes (3) 'severe emotional distress to another.'" Kerrigan v. Britches of Georgetowne, Inc., 705 A.2d 624, 628 (D.C. 1997) (quoting Bernstein v. Fernandez, 649 A.2d 1064, 1075 (D.C. 1991)). In order to meet the requisite outrageousness standard, a plaintiff must show that a defendant acted in a way that was "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." Id. (quoting Bernstein, 649 A.2d at 1075).

Here, the plaintiff alleges that Stinson failed to provide him with a laptop or tablet during his deposition. Third Am. Compl. ¶ 18. This conduct, even if true and viewed in the light most favorable to the plaintiff, simply does not rise to the level of outrageousness required for a claim of intentional infliction of emotional distress. Cf., e.g., Doe v. Bernabei & Wachtel, PLLC, 116 A.3d 1262, 1269 (D.C. 2015) (holding that the defendant's publication of a video depicting the plaintiff being assaulted along with her full name did not meet the outrageousness standard); Kerrigan, 705 A.2d at 628 (holding that the defendant's acts of manufacturing evidence to establish a false claim of sexual harassment against the plaintiff failed to meet the outrageousness standard).

Additionally, the plaintiff argues that "[a]lthough the actor's conduct may generally not be considered extreme or outrageous, it may be characterized as such when the actor knows that

the other person is peculiarly susceptible to emotional distress." Anderson v. Prease, 445 A.2d 612, 613 (D.C. 1982); see also Pl.'s Opp'n at 9. The plaintiff asserts that he "disclosed health information outlining [his] susceptibility to stress, medical disabilities[,] and reliance on visual aids" and, as a result, Stinson should have been aware of his peculiar susceptibility to emotional distress. See Pl.'s Opp'n at 9. But the plaintiff's complaint does not specify precisely what information he provided to Stinson that would have put Stinson on notice that he is peculiarly susceptible to emotional distress. See generally Third Am. Compl. And even assuming, arguendo, that Stinson was aware of the plaintiff's particular susceptibility, Stinson's mere failure to provide the plaintiff with a laptop or tablet for use during his deposition is not the type of "atrocious" or "utterly intolerable" behavior required to establish liability for intentional infliction of emotional distress. See Restatement (Second) of Torts, § 46 cmt. d (Am. Law Inst. 1965) ("Liability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community."). Accordingly, this claim must be dismissed for failure to state a claim upon which relief can be granted.

## IV. CONCLUSION

For the foregoing reasons, the Court concludes that the plaintiff's claim under Title III of the ADA must be dismissed without prejudice due to his lack of standing to pursue the claim, the plaintiff's claim under the Human Rights Act is barred by the applicable statute of limitations and must therefore be dismissed with prejudice, and the plaintiff's intentional infliction of emotional distress claim must be dismissed with prejudice as a result of his failure to sufficiently allege outrageous conduct by the defendant. Accordingly, the Court will grant Stinson's motion to dismiss the plaintiff's Third Amended Complaint in its entirety.

**SO ORDERED** this 7th day of April, 2017.[6]

                                                                      REGGIE B. WALTON
                                                                      United States District Judge

---

[6] The Court will contemporaneously issue an Order consistent with this Memorandum Opinion.